Plastic Jungle, Inc. v. Plastic Jungle, Inc. Good morning, Your Honors. Thank you, Mr. Pennington. Please proceed. Thank you. Good morning, Your Honors. May it please the Court, we are here today because the District Court in our case dismissed our case at the initial pleading stage under Rule 12b-6 of the Federal Rules of Senate Procedure. Mr. Pennington, in their opening brief, Plastic Jungle says there are no details in the spec or in the claims of any algorithms, interface, or any network infrastructures. Are there any algorithms defining the invention? Your Honor, the algorithms can be read into, inferred into what is being done. Coincidentally, we have a board put up that shows Figure 1 where the computer networks are shown that are required to implement the invention. And the algorithms that are involved here are the programming, the specialized programming that allows a person with a card to have that card verified and exchanged in an exchange system for either cash or for a different card. And again, the way the algorithms would work in this case, and as stated in the claims, this is not simply trading one card for another. The claims require that a new card is issued. So one fundamental difference in the way we view the case, as opposed to both the judge and the appellees, is that this is not the way the judge characterized the trading platform. And this goes to the ultra-martial case, where it was decided by the Federal Circuit that it is improper in that case to dismiss a case in the initial pleadings for, among other reasons, the myriad of factual issues that are involved. And in our case, that's exactly what we have. We have factual issues that are disputed. Mr. Court said that the invention merely covers a simple business transaction. So what's your best claim for demonstrating that the claims have meaningful limitations? The best claim for that, Your Honor, is that if I had two cards that appear on their face to be identical, one says $10, one says $10, and if I'm just trading cards, which is essentially what the court said, you're just a trading platform, whereas anybody can go up and trade cards. You have no idea of knowing whether this is a valid card or not. In other words, if this was shoplifted, it says $10, but it's not active, and therefore you couldn't use it anywhere. By the same token, if this one is valid, but I've used it down to zero, electronically, what you have in our system is that these computers are set up so that you can know And the purpose of that is not to trade it for this card, it's to issue a brand new card, and that is something that the judge and the appellees overlooked. Maybe I want a Macy's card. I'm not looking for a person who has this card. I'm going to this platform, and this platform allows me to issue this card. So that's what is very unique about this system, and it also involves a lot of structure, and now Macy's can have their card used to buy products, and maybe over here, I don't buy things at Amazon. Now, all of a sudden, I have a card that I couldn't use, and I have instead a newly issued card that has value to me because I can use it at a place where I want to be. So very fundamentally, and as stated in the old commercial case, these cases typically involve a lot of facts. What are the facts? In our case, this judge stated on page three of his opinion. Just looking at claim one, where is there anything about a computer? Your Honor, this is why we need claim construction. If you read the patent. Where in the patent claim is there anything about a computer? Validating these kind of cards cannot be done without a computer. That is implicit. Again, you're adding an awful lot there. I could take a look at it and validate it just by eyesight, perhaps, if I were skilled in telling whether it was used or not. You would have to construe the claims to know what you're dealing with when you're dealing with this kind of card, and you would know from the construction that there's no way of knowing this. This has no intrinsic value whatsoever. It is a representation of an electronic account. If I have this number on the back of the card, and I know the type of card. Where does it say anything about electronic cards, for starters, and an electronic account? It says nothing about all of that. We could be talking about me writing a little note to my daughter saying, I hereby award you a massage. Well, Your Honor, how would we explain to any jury what any claims mean if we don't go through claim construction? And absolutely, every case I've been involved in, we do have claim construction. Except that we're not construing claims to add. But you recognize that these claims have to give the public notice as to what the invention is. And when they are of this breadth, don't you have the problem you have encountered? Which is that we now have a system which has been struck down as not even meeting the threshold requirements for patentability. The problem with that is, Your Honor, that a gift card is a particular kind of thing that has no intrinsic value. Is it the same as a gift certificate? Because in the patent, it says also known as gift certificate. It would be one way of looking at it, but it has to have an electronic balance that can be accessed. Where's the electronic? It's in the card itself. It's worth $10. Where's that in the claims? And a gift certificate implies a piece of paper, not electronic. This piece of paper does not mean it's worth $10, because it says on its face it's worth $10. The whole idea of a gift card, which is well known in the industry, is that I can present it multiple times at multiple locations and whittle the balance down, and I have no way of knowing what that balance is at any given time until I present it for a purchase, unless I use this claimed trading platform. And the key to this invention is knowing that this is an electronic balance. Knowing that that balance can change at any time. Knowing that if I know the account number on the back, I can have 10 different people tapping into this account at the same time. That's why it doesn't do any good to trade it in person. So you're... Again, the district court said that the invention is a basic exchange business transaction. What about, for example, if I go to my favorite barbecue place and they give me a card and every time I show up they punch it, and I show up the next time and after five punches they give me a platter? I mean, does this patent cover that? No. And your honor, that would be subject to claim construction. And we would point out, if you were allowed to go through claim construction, like all the other cases that were cited in both briefs, all three briefs, it always involves a summary judgment where there's been facts explored, or like Bilski, it was done at the patent office where facts were explored, and this is what Ultramarshall said. There are facts that need to be explored. And what are those facts? What is a gift card? Is it something you can punch? No. What we would show in claim construction is that this is a representation of an electronic balance. It is not something that has intrinsic value. Is it a bar of gold that I can trade for silver? No. That's something we're not trying to claim. Also, is it a transaction between my colleague and myself? You did not limit the claim to a non-punchable card. You do it, it's just a card. It's not just a card because that term is a term of art that has a specific meaning, and we would show that. It's a card with value. It is a card that has a moving value, a changing dynamic value. So why doesn't my punch card at the barbecue joint have value? It's not in our claim. You're free to do that. We would not preempt you from doing that. What we have is, if I go to my trading platform and want to trade this $10 card for a $10 Macy's, when I go to the platform, maybe I discover that I only have $5 on it. If I don't make the transaction instantaneously, it could change even more. My wife could be at home using it online. I don't know. Let me read you the summary of the invention. The present invention provides for exchanging a gift certificate. Data associated with a first gift certificate is provided, since you say they're the same thing. When I get a gift certificate, it's a piece of paper that I buy from a store. You're claiming it because you're saying it's also a gift certificate. A gift certificate that I buy in a restaurant to give to my wife says it's a $100 gift certificate. I would argue, Your Honor, that you've extracted from the entire specification one instance where it might be slightly confused to the jury as to what you meant by gift card. We would go through the entire Markman proceedings with expert testimony, if necessary, to show what this really means and what we're referring to. You mentioned data. What is data? Commonly, data is something that you run through your computer system. This implementation in this patent is rife with computer systems. Did the word data not pre-exist computers? Your Honor, maybe in the abstract, but in this particular invention, the data is clearly what's being passed between these computer systems and specially programmed computer systems. Your Honor, the key is that this is not just a card that you can punch. It's not a certificate that says it's worth $10. I have to go to the platform. I have to enter that card into my system. I have to have an instantaneous transaction. At the moment, and that's another reason why we have to have computers, at the instant that I present this to the platform, I'm either going to ask for a cash rebate or a card of a similar value. It has to happen in an instance. If I do ledgers, if I do it manually, if I do it over the phone between people, something could happen where I could go online, somebody else could go online, use this card, diminish the value, and then you would end up with a fraudulent transaction. You'd like to save your rebuttal time? Yes, you're on my way. Thank you, Mr. Pennington. Mr. Belloli? Good morning, Your Honor. It's an honor to be in the court. Your Honor has made most of my arguments for me, actually, so I will be brief. What's at stake in 101? What's at stake? What are we examining in 101? In this case, since there's a 12B6 motion, whether the... That makes it even more difficult because you have to construe everything as they would wish it construed. Now, what is at question at stake in 101? Whether it's the claimed idea is so manifestly abstract that it could be... Specifically, whether the subject matter is eligible, the entire subject matter. All right? Correct. Does the word abstract appear in 101? It does not. It's a creative exception, Your Honor. It's... Okay, good. So we're talking about the subject matter. Mm-hmm. Yes, and the subject matter is exchanging one card for another. It really, truly goes no further than that. And I think the appellant's major point is that claim construction is needed, but they never point you to any construction that would save this patent under 101. All they ever say is, do it on a computer. And if you say, you know, read, do each limitation on a computer into the claims, you run smack in the ultramercial, which says that the claim must have a meaning... The computer must have a meaningful role. But if you just take each limitation and say, do it on a computer, the computer doesn't have a meaningful role. And getting back to what Your Honor said on the notice function of claims, there's no notice to the public that this is limited to computers. Are we dealing with claims at this section, at this point of the patent inquiry, or are we dealing with subject matter? Well, the subject matter, well, they have to look to the claims to decide whether it's eligible or not under 101. And the subject matter, all that's claimed... So we have to look at the claims, and shouldn't we go to claim construction to understand what the claims say? Well, if you go to claim construction, if you go to this three-column spec, you'll see that there's been no special definition given to any of these claim terms. There's been no disavowal. In fact, it's just the opposite at A31, column four, where it talks about how this is just preferred embodiment, and the claims should have the full scope of their terms. But see, you're attacking the patent on the basis of breadth. It's overbroad. Now, that is a very legitimate argument, but that's to be made under what section of the Patent Act? You're going to go with 102 or 103, is what you're saying? No, no, no. Actually, it's 112. I need to take you to my patent class here so we get the right sections. But yeah, it's a 112 issue, not a 101. I don't think it's an indefinite issue or an enablement issue or a written description issue. It is in addition to that, but it's also because the only idea that's set forth in the summary of the invention and the claim is the basic idea of a card for a card, and you have to validate a card. You have to look at it, see what the name is, you have to see ... Those claim terms are so unbounded that you only have claimed the idea of exchanging one card for another card. And it's not even one card or another card, or exchanging one card. Coming back to ideas, all patents cover ideas, right? By definition, yes. So I'm still struggling to understand why this one is not eligible subject matter. Well, it fails pretty much every test that's ever been used for 101. There's the machinery transformation test, it fails that. There is no ... It doesn't claim ... Machinery transformation, is that in 101? It's a test that's used to determine eligibility under 101. It's a useful tool. Eventually, you're going to have to tell me where all these tests come from. Where do they come from? The case law. Which case law do you want me to rely on? Diamond versus Deere? Bensky? Parker versus Fluke? Benson? See, they're all different. Ultramershal? I would rely on Ultramershal, even though it goes the other way, because what I think Ultramershal made clear, and I know Your Honor wrote that opinion, so correct me if you disagree, but that ... But my point is, is that they all have different requirements and different takes on that if we go with Diamond versus Deere, it's going to tell you as long as the subject matter is covered and the claim as a whole has adequacy, you should be examining the rest of it. The claims patentability under 112, 102, 103, if we do with Diamond versus Deere, if we go Parker versus Fluke, well, as long as we find one defect, an algorithm in one step of the process, that will be sufficient to call it ineligible. Which do we use? I would go with Ultramershal, and whether the claim ... But why Ultramershal? It applies all of that precedent, and not only that, but it stands for the proposition that it has to be a meaningful limitation to an application. This is not an application of the idea of exchanging two gift cards, it's the idea of exchanging a gift card for a gift card, and it's nothing more than that. If you could do a DOE analysis on infringement, and you could substitute gift card for a glass or a car, and all of a sudden you've patented the exchange of one tangible object for another, and that's just an idea, it's a basic idea of commerce that's been around for millennia. If it's been around for millennia, why don't you just show us one piece of prior art and we'll invalidate it on the spot? Well, we have, and the patent office ... I'm suggesting to you that you're wading into very disturbed, troubled, and current-shifting waters, when you had an easy way to invalidate this. Why would you go with 101 when you could have shown one or two pieces of prior art and knocked it out in a heartbeat? Well, I'll give you two reasons. One is legal and the other is practical. We think it is invalid under 101 as the legal reason. The practical reason is then you don't have to incur the cost of litigation if you could knock the patent out on a motion to dismiss that claims an abstract idea. So that would be two reasons that you would go that avenue. But, like your honor said, you can show one piece of prior art pretty quickly and the patentee put the patent in re-exam and it stands with a final rejection at the patent office right now. But getting back to 101, we just feel again that there is nothing more ... they cannot point to anything more in the claims or the specification than the basic, fundamental idea of changing one tangible object for another. Well, but they do say the exchange can be based on the value of the objects. And sometimes you're not getting the same object. You're getting something different. You're getting an object of a different value. And they're also saying that their invention also helps mitigate fraud because it checks the value of one card against another and then gives you a refund or a new card. They say that because it's not in the claims and they have to come up with something. That's what I think it is. Because validating can be anything and it talks in the dependent claims. They say that and you're saying that it's not in the claims. Doesn't that take us past the 101 question? We have to look at the claim for 101. No, I don't think it does because you could describe an invention and then not claim the invention. And they didn't claim the invention. They claimed the idea rather than a system. I mean, there are ways that you could potentially come up with something that ... Are we talking about a system or a method? We're talking about a method. Okay. Yeah, this is a method claim and there is only one independent claim, which is a method claim with no computerized components to it. You'd have to read ... If you went to claim construction, formal claim construction, you'd have to read in ... Some of the figures in the pen talk about a database and the internet. Does that mean to a procedure or to any of us that the computer's involved? I mean, how do you get to the internet without the computer? How do you get to the internet without the computer? You would need a computer, that's correct. But again, it's not in the claims. And then if you looked at ... Does it have to say computer? Does it have to say computer? Technically, no, but you would need to come up with a process because you can patent a process. There's no doubt about that, but you can't ... Again, I know it's a judicially created exception, but you can't patent the idea itself. You need to patent an application of that idea, and that's where this fails. And with that, unless your honors have any other questions. Is 101 a litigation defense? Is 101 a litigation defense? Yes, your honor. It's quite an affirmative defense. Where is that in the statute? The statute, you know, lists the litigation defenses. It does not list 101. As a litigation defense? Well, if a patent ... We're not going to follow the statute, right? You're going to tell me we ... Instead, we'll rely on case law. On case law. You don't want to follow the statute. Certainly, in the case law, patents have been invalidated under 101. The difference is case law changes, the statute doesn't. That's correct, your honor, and obviously CLS Bank is up on appeal. But getting to that point, I think this case is the outlier. This is not the CLS Bank claim, which has ... You could even argue that there's an application of an idea there, because there was a lot of pieces to that claim. Here, it really just is one gift card for another. There's four or five limitations. You get the gift card. You look at information, validate it. Has it expired? You exchange them, and you charge a fee. That's it. That's all there is. Thank you, your honor. Mr. Bavoli? Mr. Pennington? Your honor, what I just heard, and what you just heard, is one reason why this case is different from all the other cases, including CLS Bank. And that is, there are a lot of factual disputes and controversies when you try to decide, in this instance, what exactly is the patent trying to cover? What is the claim trying to cover? We haven't gotten to that point, because we were dismissed at the initial pleading stage. So with all that you heard about what's covered in the patent, I would love to make a summary judgment argument that our patent is patent eligible. I would love to go through claim construction, as we always do in patent cases, where each of these issues can be brought out with competing facts and competing law. That was not done here at all. In fact, what we're struggling with here is that at the initial pleading stage, the judge himself misapplied, misconstrued what the basic invention is. He said, on page 3 of his order, that this involves a person trading a card with a person. That's not what's going on. Oh, I could read it to be that precisely. The language of the claim could be read to do that precisely. And that's your problem, isn't it? That you have tried to over-claim. And I can make my fine professorial argument that that's a 112 issue, not a 101 issue. But we'd come back with Bilski, Mayo, Myriad, and a variety of other cases that would have issues about this professor's interpretation, wouldn't they? It may, Your Honor, but what happened in all those cases is there was a factual exploration. Unlike Ultramershal, where the court said there are facts to be considered and that this is rare, that you should ever do this. It's an exception, not the rule. Mr. Pennington's very willing to rely on Ultramershal. I think Ultramershal is the only case that talks about what to do when a district court judge dismisses a case on 35 U.S.C. 101 patent eligibility when there's been no exploration of facts. And Ultramershal said there are a lot of facts. Factually speaking, what does the patent cover? The judge stated in his opinion incorrectly that this is an exchange between a person and a person. It is actually an exchange between a person and a platform that can issue a brand new card that doesn't even exist. I can go to that platform with just one card and come out with a brand new card. I'm not trading between two people, one existing card and another existing card. That's a fundamental difference, Your Honor. I, as an individual, nobody in this room has the ability to issue a card. That requires the cooperation of all those vendors. That requires the cooperation of Amazon, of Macy's. You've pulled out a lot of cards out of your pocket. What if I pull out a credit card out of mine and I write $12. I owe you $12 and give it to you. And is that, am I giving you a card with value? No, because that's outside the scope of the claim, Your Honor. And if you look at, if we had an opportunity to... In what way? Because the claim requires validation. And the validation step specifically requires that you confirm that the card is of a brand that is admitted into the system. What if you look at it and you go, well, it says $12, not $5. That's okay with me. It's valid. That would not work in our system. And that's what we avoid. We avoid fraud. And we also avoid using cards that are not authorized. It's about a method, not a system. So what's different about your method? My method is set up to allow the issuance of new cards where the vendors are involved. And they are, if you look at our system, Your Honor, the vendors are part of the system. So they allow us, over here, to issue a replacement gift card, us. We're not the vendor. So this is a system where we have enlisted the vendors as part of our overall system. That is something very different from you or me trading our cards. Let's say you have one of these and I have one of those and we trust each other to say they're $10. That system relies on trust. Any final thought, Mr. Pennington? Yes, Your Honor. The only thing I would say in terms of machine or transformation, the validation step is yet one example of what you have to go through to make this system work. And it requires the machinery, the specifically programmed computers, to allow you to check to see if that brand is in our system. It's not just any card. It's got to be a brand that's in our system. Thank you, Your Honor. Thank you.